UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Matthew-Lane: Hassell, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   Case No. 1:23-cv-00472-JL-AJ ) |
| Devin Aileen Kimbark, et al. | ) ) |
| Defendants | ) ) ) |

**THE JUDICIAL DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

Plaintiff Matthew-Lane: Hassell, pro se, seeks damages and injunctive relief against the Judicial Defendants based on rulings they issued in their capacities as judicial officers of the New Hampshire Circuit Court. For the reasons stated herein, Plaintiff's claims against the Judicial Defendants should be dismissed for lack of jurisdiction because they are barred by the Rooker-Feldman doctrine, judicial immunity, and Eleventh Amendment sovereign immunity, and because abstention is otherwise counseled under the Younger doctrine.

**BACKGROUND**

Plaintiff's complaint arises out of child "custody proceedings" in the New Hampshire Circuit Court between himself and Defendant Devin Aileen Kimbark over which the Judicial Defendants have presided. (ECF Doc. No. 1 at 4 ¶ 4). According to Plaintiff, in presiding over those proceedings, the Judicial Defendants have violated various provisions of federal and state law, (see id. at 8–9), and based on those purported violations Plaintiff now seeks damages and injunctive relief against them. (See id. at 10).

1

I. **Plaintiff's Allegations**

In support of his demands for relief, Plaintiff alleges that at the outset of the underlying child custody proceedings, one of the Judicial Defendants granted Defendant Kimbark "sole decision making and sole residential responsibility" and issued a corresponding restraining order against Plaintiff on an ex parte basis. (Id. at 4 ¶¶ 5–6). Plaintiff asserts that the Judicial Defendants thereafter "denied [him] evidentiary hearings," granted him "very little time with" his child, "ordered the highest amount of child support prescribed by law," and "ordered [him] to drug testing but did not do the same with [Defendant Kimbark]." (Id. at 4–5 ¶ 7; see id. at 6 ¶ 13). He further alleges that these judicial proceedings have ultimately resulted in the New Hampshire Department of Health and Human Services' Bureau of Child Support Services garnishing his wages. (Id. at 5 ¶ 12).

According to Plaintiff, the Judicial Defendants' rulings in the child custody proceedings were "based upon hearsay and perjury claims with no evidence to prove such." (Id. at 5 ¶ 7). He further insists that he filed numerous "unrebutted affidavits" that the Judicial Defendants "repeatedly ignored." (Id. at 6 ¶ 15). They did so, Plaintiff says, because they were "biased and prejudiced" against him "due to the Social Securit[y] Act." (Id. at 6 ¶¶ 16–17).

The crux of this allegation appears to be Plaintiff's belief that, under the Social Security Act, the Judicial Defendants "get paid by the federal government" when they award one parent "significantly more time and access to the child." (Id. at 6 ¶ 19). Based on this apparent understanding of the Social Security Act, Plaintiff insists the Judicial Defendants must have

2

ruled in Defendant Kimbark's favor simply to further their own personal financial interests.[1]  (Id. at 6 ¶¶ 17, 19).  As Plaintiff puts it:

> No State judge can decide in favor of either parent without being prejudiced due to the Social Securities [sic] Act.  The Social Security Act-Title IV-D Section 458-Incentive Payments to States, pays all States and their Judicial subdivisions a percentage of every dollar paid for child support. . . .
>
> If state judges get paid by the federal government, based on one parent being ordered significantly more time and access to the child, such decisions can only and will always be seen as prejudice therefore, until the Social Security Act is revised, striking such incentives from the record . . . .
>
> The best interest for the child seems to be where the state can make the most money from said child in accordance with the Social Security Act . . . .
>
> The Courts should only decide the best benefit for the child and according to the statistics (child rearing statistics), boys and girls do best with the father, rather than the mother.

(Id. at 6 ¶¶ 17, 19 (internal parenthetical omitted); id. at 10).

## II.   Plaintiff's Claims

Having not received his desired outcome in the Circuit Court's child custody and support proceedings, Plaintiff now relies on the foregoing allegations to "demand and instruct" this Court to award him damages and injunctive relief based on the following claims.[2]  (Id. at 10).

---

[1] Plaintiff's apparent understanding of the Social Security Act's "incentive payments to States" provision, as codified at 42 U.S.C. § 658a, is plainly erroneous.  As one court succinctly explained in rejecting a similar allegation that the same provision provided a state circuit court judge with a disqualifying "pecuniary interest" in a child support proceeding: "We are aware of no state policy that provides kickbacks to trial court judges based on the amount of child support awarded. . . . [T]his is not a money-making venture.  Rather, the federal government provides grants to the states to cover a percentage of the cost of running [Friend of Court] systems."  Iannucii v. Jones, No. 345886, 2019 Mich. App. LEXIS 8181, at *12–13 (Mich. Ct. App. Dec. 19, 2019).

[2] It is noteworthy that in the first sentence of his complaint, Plaintiff disclaims any claim that his own constitutional rights have been violated, stating: "To be clear, I do not contest violations of my constitutional rights[.]"  (ECF No. 1 at 1).  He instead insists his claims are based on the Judicial Defendants' "violat[ing] their . . . contractual government restrictions" under various constitutional amendments.  (Id.).  Plaintiff's acknowledgment that he does not contend his rights have been violated, along with his failure to otherwise state a plausible basis for a legally cognizable claim, raise questions about whether he has standing to bring this action.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560

First, in Count I, Plaintiff claims the Judicial Defendants have "engaged in a pattern of racketeering activity in violation of" the Racketeer Influenced and Corrupt Organizations Act, as codified at 18 U.S.C. §§ 1961–1968. (Id. at 8). They have done so, according to Plaintiff, by their "orders, requests, statements, [and] claims of the records . . . ." (Id.).

Second, by way of Count II, Plaintiff claims the Judicial Defendants have violated their "contractual government restrictions," (id. at 1), as set forth in the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, (id. at 8–9). With respect to the First Amendment, Plaintiff claims that the Judicial Defendants' have "den[ied] me my right to communicate with our daughter" through their rulings. (Id. at 2). As to the Fourth Amendment, he claims that as a result of those rulings, he has "had [his] child seized" without a warrant. (Id.). Under the Fifth Amendment, Plaintiff appears to claim that the Judicial Defendants' rulings have "denied [him] fair and equal access to [his] daughter due to a fraudulent and criminal denial of due process . . . ." (Id.). Meanwhile, Plaintiff indicates that his Ninth Amendment claim is generally based on how those rulings have denied him his "prerogative rights" for his child's "care and upbringing." (Id. at 3). And with respect to his Fourteenth Amendment claim, Plaintiff asserts that the Judicial Defendants have violated the equal protection clause by not granting him equal custody of his child, as "[t]he very first thing a judge should do is order equal custody of any and all minor children until such time as either party withdraws their rights and their interests to the minor child(ren)." (Id.).

---

(1992) (explaining that the first element of the "constitutional minimum of standing" is that the "plaintiff must have suffered an injury in fact – *an invasion of a legally protected interest* which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical") (internal quotations and citations omitted; emphasis added). In light of the plain application of the Rooker-Feldman doctrine, judicial immunity, and Eleventh Amendment sovereign immunity, as discussed *infra* at 6–12, these issues regarding Plaintiff's standing and his failure to state a legally cognizable claim are not further addressed herein.

Finally, in Count III, Plaintiff claims the Judicial Defendants have violated numerous provisions of the New Hampshire Constitution as well as a variety of New Hampshire statutes. (See id. at 9 (listing constitutional provisions); see also id. at 3 (listing statutes); id. at 11 (listing statutes in Prayer G(iv)).

## STANDARD OF REVIEW

Generally speaking, "[w]hen considering a motion to dismiss under Rule 12(b)(1), the Court should apply a standard of review 'similar to that accorded a dismissal for failure to state a claim' under Rule 12(b)(6)." Conservation Law Foundation, Inc. v. Pease Development Authority, Case No. 16-cv-493-SM, 2017 WL 4310997, at *1 (D.N.H. Sept. 26, 2018) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).

As such, where (as here) a 12(b)(1) motion is based on the facial validity of the complaint rather than a dispute of fact, "[a] court's inquiry is largely the same under both rules: the well-pleaded facts must be taken as true and viewed in the light most favorable to the plaintiff, and all reasonable inferences from those facts must be drawn in the plaintiff's favor." Marasco & Nesselbush, LLP v. Collins, 6 F.4th 150, 166 (1st Cir. 2021).

## ARGUMENT

Plaintiff's federal claims against the Judicial Defendants must be dismissed in their entirety because: (1) the Court lacks subject matter jurisdiction over the claims under the Rooker-Feldman doctrine; (2) irrespective of Rooker-Feldman, the claims are jurisdictionally barred by both judicial immunity and Eleventh Amendment sovereign immunity; and (3) even if the Court had jurisdiction over the claims, the Younger doctrine still counsels the Court to abstain from exercising jurisdiction. Because all of Plaintiff's federal claims must be dismissed,

5

the Court should decline to exercise supplemental jurisdiction over his state law claims and dismiss those as well.

I. **The Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine**

"The Rooker-Feldman doctrine bars 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Adames v. Fagundo, 198 Fed. Appx. 20, 22 (1st Cir. 2006) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).  In other words, "if federal litigation is initiated *after* state proceedings have ended, and the plaintiff implicitly or explicitly seeks review and rejection of the state judgment, then a federal suit seeking an opposite result is an impermissible attempt to appeal the state judgment to the lower federal courts, and . . . the federal courts lack jurisdiction." Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005) (internal quotation and brackets omitted; italics in original).  The doctrine is "premised on the rule that among federal courts only the U.S. Supreme Court has authority to invalidate state civil judgments." Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003).

"As long as a state-court suit has reached a point where neither party seeks further action in that suit, then the state proceedings are considered ended and the judgment is deemed sufficiently final to trigger the Rooker-Feldman doctrine." Klimowicz v. Deutsche Bank Nat'l Trust Co., 907 F.3d 61, 65 (1st Cir. 2018) (internal quotation and brackets omitted).

Notably, in the unique context of federal cases like this one that arise out of state court child custody proceedings, this Court recently observed how the First Circuit Court of Appeals has "not[ed] that the doctrine generally prevents a parent from attempting to invalidate a child

6

custody order in federal district court." Henderson v. Gil, Case No. 22-cv-332-JL, 2022 U.S. Dist. LEXIS 205503, at *6 (D.N.H. Oct. 28, 2022) (Johnstone, M.J.) (citing Mandel, 326 F.3d at 271–272), report and recommendation approved, 2022 U.S. Dist. LEXIS 204623 (D.N.H. Nov. 10, 2022) (LaPlante, J.).

      Consistent with this Court's observation in Henderson, courts have routinely determined that standing orders in state child custody proceedings are sufficiently final for purposes of triggering Rooker-Feldman.  See, e.g., Nelson v. Sharp, No. 22-6018, 2023 U.S. App. LEXIS 26003, at *5–6 (6th Cir. Sept. 29, 2023) (ruling that Rooker-Feldman supported the district court's dismissal of claims where "[t]he plaintiffs alleged that [the state circuit court judge's] orders violated their constitutional rights and sought a declaration voiding the [state circuit court's] orders and returning the children to their care and custody"); Fox v. Lederman, Case No. 17-21223-CIV-Moore/Simonton, 2018 U.S. Dist. LEXIS 11539, at *8 (S.D. Fl. Jan 23, 2018) (recognizing that "[t]he Eleventh Circuit has consistently applied the Rooker-Feldman doctrine to suits challenging child custody rulings made by state courts."); Johnson v. Salmon, Civil Action No. 15-11781-DJC, 2016 U.S. Dist. LEXIS 73390, at *8–9 (D. Mass. June 2, 2016) (concluding that under Rooker-Feldman, the court lacked jurisdiction over claims that "necessarily would require this Court to delve into the validity of the California [superior court] and Massachusetts [probate court] orders" pertaining to child custody); East v. Lake County Sheriff Dep't, Cause No. 2:14cv058 PPS JEM, 2015 U.S. Dist. LEXIS 120272, at *11–12 (N.D. Ind. Sept. 9, 2015) (ruling that Rooker-Feldman barred the court from considering claims of injury relating to state superior court custody order).

      The Circuit Court's child custody and support orders out of which Plaintiff's claims arise accordingly trigger Rooker-Feldman.  And although Plaintiff casts his requests for review of the

orders in the Circuit Court's custody and support proceedings in terms of various pseudo-constitutional and statutory claims against the Judicial Defendants, it is clear he "cannot hoist himself over [the Rooker-Feldman doctrine] just by re-labeling his case as an attempt to assert a federal constitutional right." Zenon v. Guzman, C.A. No. 3:16-cv-30129-MAP, 2018 WL 324715, at *5 (D. Mass. Jan. 8, 2018); accord Ellison, Civil No. 10-cv-351-SM, 2010 WL 5139033, at *3 (D.N.H. Nov. 18, 2010) ("A litigant may not seek to reverse a final state court judgment simply be recasting his complaint in the form of a civil rights action.") (citing Fortune v. Mulherrin, 533 F.2d 21, 22 (1st Cir. 1976), and Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009)).

For these reasons, the Rooker-Feldman doctrine applies to Plaintiff's claims against the Judicial Defendants and the Court therefore lacks subject matter jurisdiction over those claims. See Ingress v. McKenney, No. 14-cv-202-LM, 2014 WL 5465866, at *4 (D.N.H. Oct. 28, 2014) ("When the Rooker-Feldman doctrine bars a claim, a district court lacks subject-matter jurisdiction over it.") (citing Exxon Mobil, 544 U.S. at 291)).

## II. Plaintiff's claims are wholly barred by both judicial immunity and Eleventh Amendment sovereign immunity

### a. Judicial immunity

"[A] general principle of the highest importance to the proper administration of justice" is that "judicial officer[s], in exercising the authority vested in [them], should be free to act upon [their] own convictions, without apprehension of personal consequences to [themselves]." Stump v. Sparkman, 435 U.S. 349, 355 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 347 (1871)). Indeed, it is widely recognized that "[p]ermitting judges to be questioned on their rulings . . . would lead to 'continual calumniations' and nothing short of the 'subversion of all justice." Zenon v. Guzman, 924 F.3d 611, 616 (1st Cir. 2019) (quoting Bradley).

8

Accordingly, judicial officers have long been granted immunity against actions for damages arising out of their judicial acts.  See Cleavinger v. Saxner, 474 U.S. 193, 199 (1985) (observing that "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction") (quoting Pierson v. Ray, 386 U.S. 547, 553–554 (1967)).  Federal actions for injunctive relief against state judicial officers are also barred by judicial immunity, "unless a declaratory decree was violated or declaratory relief was unavailable."[3]  42 U.S.C. § 1983.

The immunity afforded judicial officers is a broad "immunity from suit" that is "not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."  Mireles v. Waco, 502 U.S. 9, 11 (1991).  As such, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority[.]"  Stump, 435 U.S. at 357.  Instead, the immunity gives way only when the judicial officer "acted in the clear absence of all jurisdiction."  Id.

Here, Plaintiff's allegations and claims against the Judicial Defendants relate to the Judicial Defendants' rulings on various matters in the child custody and support proceedings over which they were presiding.  Because these judicial rulings were well within the scope of the

---

[3] In its 1984 decision in Pulliam v. Allen, 466 U.S. 522 (1984), a divided United States Supreme Court ruled that judicial immunity did not protect state judges from claims for injunctive relief in Section 1983 actions.  Congress thereafter amended Section 1983 to state that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983, amended by Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996).  As such, it is now clear that state judicial officers generally enjoy immunity against claims for injunctive relief under federal law.  See Adames, 198 Fed. Appx. at 22 ("While Pulliam did hold that judicial immunity was not a bar to claims for injunctive or declaratory relief under section 1983, [ ] that case was superseded by statute in 1996."); Nollet v. Justices of Trial Court of Com. of Mass., 83 F. Supp. 2d 204, 210 (D. Mass. 2000) (recognizing that "in 1996 Congress passed the Federal Courts Improvement Act . . . which legislatively reversed Pulliam in several important respects.").

Judicial Defendants' normal judicial duties, judicial immunity unquestionably bars Plaintiff's claims.  Cf. Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (ruling that judicial officer was "absolutely immune" from suit where plaintiff "failed to plead either absence of jurisdiction or that any of the judge's acts were not judicial in nature"); Decker v. Hillsborough County Attorney's Office, 845 F.2d 17, 21 (1st Cir. 1988) ("[R]egardless of whether the rulings Justice Dalianis made in the course of those proceedings were right or wrong, Justice Dalianis is entitled to absolute immunity from damages liability."); Griffin v. Nadeau, Civil No. 17-cv-209-LM, 2017 U.S. Dist. LEXIS 154990, at *4–5 (D.N.H. Sept. 21, 2017) (ruling that judicial immunity barred suit based on judicial officer's "alleged bias . . . statements, legal conclusions, and decisions he made in the context of [his judicial role]"), report and recommendation approved, 2017 U.S. Dist. LEXIS 164332 (D.N.H. Oct. 3, 2017).

Notably, Plaintiff provides no plausible basis to believe that either of the very narrow exceptions to Section 1983's clear bar against injunctive relief applies here.  Specifically, Plaintiff does not allege facts from which it may be inferred that any of the judicial acts he complains of violated a standing declaratory decree.  Nor does he allege facts showing that declaratory relief from those same judicial acts was unavailable in state court by way of timely appeal.  See Davis v. Campbell, No. 3:13-CV-0693 (LEK/ATB), 2013 U.S. Dist. LEXIS 184069, at *20 (N.D.N.Y. June 26, 2013) (explaining that "generally, declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order") (citing LeDuc v. Tilley, No. 05-CV-157, 2005 U.S. Dist. LEXIS 12416 (D. Conn. June 22, 2005)).

For these reasons, judicial immunity is an absolute jurisdictional bar to Plaintiff's claims for both damages and injunctive relief.  See Lewis v. Hynes Grp., Civil No. 21-cv-597-LM, 2022

10

U.S. Dist. LEXIS 28165, at *2 (D.N.H. Feb. 16, 2022) ("Stripped of legal labels and conclusions, [plaintiff's] complaint fails to establish that this court has subject matter jurisdiction to consider his claims against the Judicial Defendants, who are immune from suit.").

### b. Eleventh Amendment sovereign immunity

In addition to running headlong into the Judicial Defendants' judicial immunity, Plaintiff's claims for damages and injunctive relief are barred by Eleventh Amendment sovereign immunity too. "The Eleventh Amendment generally bars suits against states and state officials." Doe v. Shibinette, 15 F.4th 894, 903 (1st Cir. 2021). This "[s]overeign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather it provides an immunity from suit." New Hampshire v. Ramsey, 366 F.3d 1, 14 (1st Cir. 2004) (quoting Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 766 (2002)).

"A state's immunity under the Eleventh Amendment applies whether a private plaintiff's suit is for monetary damages or some other type of relief." Id. (citing Seminole Tribe v. Fla., 517 U.S. 44, 58 (1996)). And while the Ex parte Young doctrine provides a narrow exception "that allows certain private parties to seek judicial orders in federal court preventing state *executive officials* from enforcing state laws that are contrary to federal law," Whole Woman's Health v. Jackson, __ U.S. __, ___, 142 S. Ct. 522, 532 (2021) (emphasis added), this exception does not apply to claims for prospective injunctive relief against state court judges:

> [A]s Ex parte Young explained, this traditional exception does not normally permit federal courts to issue injunctions against state-court judges or clerks. Usually, those individuals do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties. If a state court errs in its rulings, too, the traditional remedy has been some form of appeal, including to this Court, not the entry of an ex ante injunction preventing the state court from hearing cases. As Ex parte Young put it, "an injunction against a state court" or its "machinery" "would be a violation of the whole scheme of our Government."

Id. (quoting Ex parte Young, 209 U.S. 123, 163 (1908)).

11

Indeed, there is a "longstanding public policy against federal court interference with state court proceedings," based in part on the fact that the party seeking the injunction has an adequate remedy at law: defending her or himself in the state court proceeding. Younger v. Harris, 401 U.S. 37, 43 (1971). Since Whole Woman's Health was decided, numerous federal courts have acknowledged its holding with respect to state court judges.[4] Under that holding, to the extent Plaintiff's claims can be construed to seek prospective injunctive relief against the Judicial Defendants, they do not fall within the Ex parte Young doctrine. The Judicial Defendants' sovereign immunity under the Eleventh Amendment is thus also a complete jurisdictional bar to Plaintiff's claims. See Lewis, 2022 U.S. Dist. LEXIS 28165, at *2.

## III.  Abstention is otherwise counseled under the *Younger* Doctrine

Even if Rooker-Feldman, judicial immunity, and Eleventh Amendment sovereign immunity were not each independently fatal to Plaintiff's claims—which they are—the Court would still need to abstain from exercising jurisdiction to the extent Plaintiff seeks injunctive relief that would interfere with enforcement of the Circuit Court's child custody and support orders.

---

[4] See, e.g., In re M.M., No. 21-2924, 2022 U.S. App. LEXIS 13400, *5 (2d Cir., May 18, 2022) ("[T]he Supreme Court has recently reaffirmed that a *Young* suit may not be brought even against individual state-court *officials* such as judges and clerks."); Coleman v. JP Morgan Chase Bank, 21-cv-6406(RPK)(TAM), 2023 U.S. Dist. LEXIS 18803, *14 n.3 (E.D.N.Y, Jan. 31, 2023), report and recommendation approved, 2023 U.S. Dist. LEXIS 58647, at *1–2 (E.D.N.Y., Mar. 31, 2023) ("Ex parte Young does not permit suit against judicial officers."); Bishop v. Funderburk, No. 3:21-cv-679-MOC-DCK, 2022 U.S. Dist. LEXIS 82174, at *14 (W.D.N.C., May 6, 2022) ("Ex parte Young exception, by its own express terms, does not apply to" claims against justices and clerks of North Carolina appellate courts); see also Carroll v. Walk, Civ. No. 23-2187, 2023 U.S. Dist. LEXIS 112696, at *11 (E.D. Pa., June 29, 2023) (recognizing that, consistent with Whole Woman's Health, "federal courts normally may not issue injunctions against state-court judges or clerks"); Betts v. Brnovich, No. CV-22-01186-PHX-JJT, 2023 U.S. Dist. LEXIS 30362, at *15–16 (D. Ariz., Feb. 22, 2023) (relying on Whole Woman's Health to dismiss claims brought against state-court judges under Ex parte Young); Lexington Ins. Co. v. Mueller, No. 5:22-cv-00015-JWH-KK, 2023 U.S. Dist. LEXIS 20019, at *15–*19 (C.D. Cal., Feb. 3, 2023) (observing the Whole Woman's Health precluded Ex parte Young claims against state-court judges, but did not address whether such claims could proceed against tribal judges).

"The doctrine of Younger v. Harris, 401 U.S. 37 (1971), creates an exception to the general rule that 'federal courts must exercise their jurisdiction and decide cases brought before them.'" Puiia v. New Hampshire, Civil No. 12-cv-243-PB, 2012 U.S. Dist. LEXIS 99520, at *5 (D.N.H. July 18, 2012) (McCafferty, M.J.) (quoting Mass. Delivery Ass'n v. Coakley, 671 F.3d 33, 40 (1st Cir. 2012), report and recommendation approved, 2012 U.S. Dist. LEXIS 109417 (D.N.H. Aug. 6, 2012) (Barbadoro, J.). In general terms, the doctrine "counsels federal-court abstention when there is a pending state proceeding." Amadi v. Dep' of Child. & Fams., 245 F. Supp. 3d 316, 320 (D. Mass. 2017) (quoting Moore v. Sims, 443 U.S. 415, 423 (1979)).

More specifically, "[t]he Younger doctrine generally requires a federal court to abstain from hearing a case 'when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge.'" Puiia, 2012 U.S. Dist. LEXIS 99520, at *5 (quoting Mass. Delivery, 671 F.3d at 40). This is because "[i]n the absence of extraordinary circumstances, interests of comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings." Id. (quoting Esso Standard Oil Co. v. Lopez-Feytes, 522 F.3d 136, 143 (1st Cir. 2008)).

As this Court recently explained in Henderson, "[a] child custody proceeding implicates important state interests and is likely to provide [the plaintiff] with a fair opportunity to raise his federal defenses" and "accordingly, if the child custody matter is ongoing, abstention is likely appropriate . . . pursuant to the Younger doctrine . . . ." Henderson, 2022 U.S. Dist. LEXIS 205503, at *8–9. And as the Court previously observed in Eastman v. New Hampshire, "[t]he Younger abstention doctrine has been applied by courts to deny requests by federal plaintiffs for

13

injunctions staying state court family law proceedings." Civil No. 11-cv-316, 2012 U.S. Dist. LEXIS 15090, at *8 (D.N.H. Jan. 17, 2012) (McCafferty, M.J.), report and recommendation approved, 2012 U.S. Dist. LEXIS 15091 (D.N.H. Feb. 8, 2012) (McAuliffe, J.); see Malachowski v. City of Keene, 787 F.2d 704, 708 (1st Cir. 1986) ("the fact that family law is at issue . . . makes abstention particularly appropriate") (internal quotations and citations omitted); Colassi v. Loop, No. 08-cv-115-JL, 2008 U.S. Dist. LEXIS 40628, at *2–3 (D.N.H. May 20, 2008) (applying Younger to abstain from intervening in state court proceedings involving child custody); Phillips v. Martin, 315 F.App'x 43, 44 (10th Cir. 2008) (finding abstention under Younger appropriate where plaintiff sought to enjoin ongoing state court child support enforcement proceedings); Wideman v. Colorado, 242 F.App'x 611, 614 (10th Cir. 2007) (ruling that Younger abstention was appropriate to bar federal suit seeking interference with ongoing state court child custody and support action).

The Younger doctrine is appropriately applied here. For one, Plaintiff seeks injunctive relief granting him, inter alia, "immediate 50/50 custody" of his child, (ECF Doc. No. 1 at 10 (Prayer A)), "equal decision making responsibilities of child daycare and school and medical care," (id. (Prayer B)), immediate relief from wage garnishment, (id. (Prayer C)), and a prohibition against any "State judge . . . mak[ing] any order in family court other than 50/50 equal custody," (id. (Prayer D)). On its face, such relief purports to interfere with ongoing determinations of his parental rights and responsibilities in the Circuit Court's child custody and support proceedings as it would undermine the Circuit Court's ability to enforce its orders in those proceedings. See Puiia, 2012 U.S. Dist. LEXIS 99520, at *6 (explaining that "Younger applies where the fundamental workings of the state's judicial system (like its method of enforcing judgments) is put at risk by the relief asked of the federal court") (internal ellipsis and

14

brackets omitted). Such proceedings, meanwhile, are commonly recognized to "implicate important state interests." See Henderson, 2022 U.S. Dist. LEXIS 205503, at *8–9; Eastman, 2012 U.S. Dist. LEXIS 15090, at *8. And finally, there is no reason to believe that Plaintiff did not have an opportunity to raise any constitutional claim related to the proceedings in state court. See Puiia, 2012 U.S. Dist. LEXIS 99520, at *10 (explaining that "[f]or Younger purposes, all that matters is that the state proceedings give an opportunity to make a constitutional argument") (quotation omitted).

For these reasons, even if Rooker-Feldman, judicial immunity, and Eleventh Amendment sovereign immunity did not absolutely bar Plaintiff from invoking this Court's jurisdiction, the Younger doctrine would still counsel the Court to abstain from exercising jurisdiction under the circumstances of this case.

### IV. The Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims

"As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); accord Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state [law] claims should be dismissed as well."). Under such circumstances, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see Wright & Miller, 13D Fed. Prac. & Proc. Juris. § 3567.3 n.72 (3d ed.) (collecting cases where federal courts declined supplemental jurisdiction after dismissal of federal claims).

This case is in the very earliest stage of litigation. All of the named defendants have moved to dismiss, none have yet had to answer, no discovery has been conducted, and the Court has not invested any material amount of judicial resources into litigation of Plaintiff's state law claims (the factual and legal basis of which are unclear and stated in no more than conclusory terms). Under these circumstances, the balance of the factors accordingly weighs strongly in favor of declining jurisdiction over Plaintiff's state law claims. The Court should therefore exercise its discretion to dismiss Plaintiff's state law claims too.

## CONCLUSION

In summary, pursuant to Rule 12(b)(1), the Court should dismiss Plaintiff's federal claims against the Judicial Defendants for want of jurisdiction because: (1) the Rooker-Feldman doctrine applies; (2) the claims are absolutely barred by both judicial immunity and Eleventh Amendment sovereign immunity; and (3) abstention is otherwise counseled under the Younger doctrine and the principles of equity, comity, and federalism that Younger incorporates. Because all of Plaintiff's federal claims are jurisdictionally barred, the Court should decline to exercise supplemental jurisdiction over Plaintiff's claims under state law.

[*intentionally blank; signature page and certificate of service to follow*]

Respectfully submitted,

THE HONORABLE MICHAEL L. ALFANO,
THE HONORABLE TODD H. PREVETT, and
THE HONORABLE KERRY P. STECKOWYCH

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Dated:  December 8, 2023          By: /s/ Nathan W. Kenison-Marvin
Nathan W. Kenison-Marvin, Bar No. 270162
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
nathan.w.kenison-marvin@doj.nh.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2023, copies of the foregoing were electronically served upon Plaintiff and other parties of record via the Court's electronic filing system.

/s/ Nathan W. Kenison-Marvin
Nathan W. Kenison-Marvin